\*\*E-filed 8/8/07\*\*

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| PARTO TABATABAI,<br><br>Plaintiff,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY DISABILITY PLAN,<br><br>Defendant. | No. C-06-00695 JF<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

Plaintiff Parto Tabatabai challenges the determination of defendant Hewlett-Packard Company Disability Plan ("the Plan") denying her claim for long-term disability ("LTD") benefits. This matter was initially heard before Judge Ronald M. Whyte on March 6, 2007. However, after the matter was submitted, Judge Whyte discovered that he was required to recuse himself and did so by order dated March 13, 2007. Following a case management conference with the undersigned Judge on March 23, 2007, the parties agreed to re-submit the matter on the record before Judge Whyte. Based on the parties' trial briefs, the administrative record, and trial transcript, the Court now issues its findings of fact and conclusions of law.

Case No. C 06-00695 JF
FINDINGS OF FACT AND CONCLUSIONS OF LAW
(MAG)

# I. FACTUAL BACKGROUND[1]

1. Tabatabai formerly worked for the Hewlett-Packard Company ("HP") as a software engineer.
2. Tabatabai was covered by the Plan, which is administered for HP by VPA, Inc.("VPA").
3. According to her job description, Tabatabai's position at HP required mental functionality, but was otherwise not physically demanding, requiring that she be able to sit for seven-and-a-half hours and walk for half an hour. AR 294.

**A.  The Plan**

4. The Plan states that in order for VPA to approve a claim for benefits, a Member must establish that he or she is "Totally Disabled" as defined under the Plan. Pursuant to the Plan, a Member, such as Tabatabai, who is applying for LTD benefits, must establish "Total Disability" by demonstrating that after the initial fifty-two-week period of receiving short-term disability benefits, "the Member is continuously unable to perform any occupation for which he or she is or may become qualified by reason of his or her education, training or experience." Curry Decl., Ex. B, Plan § 2(o)(ii), HP327.
5. The Plan's claims administrator must make the determination of "Total Disability" on the basis of "objective medical evidence." Plan at § 2(o), HP328. The Plan defines "objective medical evidence" as "evidence establishing facts or conditions as perceived without distortion by personal feelings, prejudices or interpretations." *Id.*
6. For purposes of evaluating Total Disability for LTD benefits purposes, the Plan imposes the following limitations on benefits for mental illness:

> With respect to any Total Disability caused or contributed to by mental illness or alcohol or drug abuse, the following limitations shall apply
>
> (A)  Mental Illness
> During the period described in (ii) above [setting forth the definition of "Total Disability" after the initial fifty-two-week period], in the case of a disability resulting from a nervous or mental disorder, the Member shall be considered Totally Disabled only if he or she is confined to a hospital or other licensed long term care facility for the treatment of such disability or has been so confined for fourteen (14) or more consecutive days during the preceding

---

[1] The facts herein are taken from the administrative record before the Plan administrator. Defendant Hewlett-Packard Company Disability Plan submitted the complete administrative record ("AR"). *See* Curry Decl., Ex. A [hereinafter referenced as "AR ___"].

three (3) months.  An illness shall be considered a nervous or mental disorder if:

(1) The illness has psychologic or behavioral manifestations or results in impairment of mental functioning due to any causes including, but not limited to, social, psychological, genetic, physical, chemical or biological; and

(2) The illness has a primary diagnosis that either is listed in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Third Edition-Revised, or falls within diagnostic codes 290 through 319 in the International Classification of Diseases, 9th Revision [the "ICD-9"].

Plan § 2(o), HP328-29.

7. The Plan places the burden of producing evidence of Total Disability on the claimant.  Plan § 7(b) and § 8(b), HP366, HP369.

**B.  Tabatabai's Condition**

8. In late 2000, Tabatabai became extremely fatigued, began experiencing body aches and pain, was becoming depressed and anxious, and had gained weight.

9. Tabatabai sought treatment from Dr. Arthur Douville, a neurologist and neuropsychiatrist. Dr. Douville stated: "My impression is of mixed anxiety and depression with somatization. However, I did consider the diagnosis of intermittent porphyria, and felt that the patient should be screened for collagen vascular and endocrinologic disease." AR 56.  Somatization is a common psychiatric term indicating conversion of anxiety into physical symptoms. Declaration of William Green ("Green Decl."), Ex. A.

10. In March 2001, Tabatabai was examined by Dr. David Peterson, an endicronologist and was placed on Synthroid, a thyroid replacement therapy. AR 53.  Dr. Douville observed: "Her visit was spent reviewing her laboratory studies and what she might expect based on her known Hashimoto's thyroiditis." *Id.*  Her antithyroid antibody studies had been "relatively modestly abnormal" and was 1:160. *Id.*  An antinuclear antibody test is done early in the evaluation of a person for autoimmune or rheumatic disease.  Green Decl., Ex. E. Autoimmune diseases can cause autoantibodies, which are antibodies that the bodies own cells.  Some healthy people have a positive test for autoantibodies. *Id.*

11. In November 2001, Dr. Douville referred Tabatabai to Dr. Christopher Ussher, M.D., a rheumatologist, noting that "her Antinuclear antibody has increased somewhat to 1:320." AR 54.

12. In early 2002, Tabatabai continued to experience chronic fatigue, depression, anxiety attacks, chest pain, and cognition difficulties. On February 12, 2002, on a Neurological Office Revisit form, Dr. Douville noted that Tabatabai was experiencing "lots of verbal abuse from manager, anxiety attacks, chest pain, [decreases] somewhat [in the] absence of supervisor. Lots of stress . . . ." His impression: "Job related stress and psychophysiologic response." His treatment plan was to have Tabatabai off work for three months and to revisit in 2 weeks. AR 308.

13. On March 7, 2002, Dr. Douville noted on an Neurological Office Revisit form that there was no change because Tabatabai was "not off work yet." The impression noted by Dr. Douville is the same "psychophysiologic disorder." AR 307.

14. On a Physician's Certification for Self-Insured Disability Benefits dated March 11, 2002, Dr. Douville listed a diagnosis of "Mixed disorders and reaction to stress" leading to symptoms of "multiple somatic complaints: fatigue, chest main, anxiety attacks, other symptoms involving multiple organ systems." He stated that Tabatabai was fully disabled beginning March 8, 2002 and would be able to return full-time to work on June 8, 2002. AR 313.

15. In May 2002, now under the care of Dr. Steven H. Strong, Ph.D., a psychologist, Tabatabai submitted another Physician's Certification for Self-Insured Disability Benefits dated May 17, 2002. AR 199, 230. Dr. Strong listed a primary diagnosis of "Major Depressive Episode – Severe, without psychotic symptoms" and a secondary diagnosis of "Panic disorder, without agoraphobia" with symptoms of "Depressed mood, anxiety and panic attacks, sleep disturbance, reduced energy, lethargy, psychomotor retardation, slowed cognition. Also has several co-morbid medical conditions she is being treated for." *Id.* Dr. Strong stated that she was fully disabled beginning March 8, 2002 and would be able to return to light duty work on approximately September 1, 2002. *Id.* A second Physician's Certification for Self-Insured Disability Benefits completed by Dr. Strong and dated August 21, 2002 listed the

|   |   |   |
|---|---|---|
| 1 |  | same diagnoses and similar symptoms, but pushed back Tabatabai's return to work, this time |
| 2 |  | on restricted hours, to December 31, 2002. AR 276. A third Certification dated December |
| 3 |  | 23, 2002 listed similar diagnoses and similar symptoms and pushed back Tabatabai's return |
| 4 |  | to work on restricted hours to March 3, 2003. AR 151. |
| 5 | 16. | Tabatabai's psychiatrist noted that "she has been able to take care of her [activities of daily |
| 6 |  | living], make calls, run errands as needed." HP204. |
| 7 | 17. | On August 15, 2002 and September 10, 2002, Tabatabai was treated by J. Ronald Hess, |
| 8 |  | M.D., a neurologist, who ran various neurological tests, including an MRI of Tabatabai's |
| 9 |  | brain, but was unable to find a neurological cause for her symptoms. AR 278, 281-82. |
| 10 | 18. | On a Neurological Office Revisit form dated October 2, 2002, Dr. Douville listed his |
| 11 |  | impression as "Hashimoto's." |
| 12 | 19. | In a Daily Activities Questionnaire received by VPA on December 31, 2002, Tabatabai |
| 13 |  | stated that she did her own shopping, drove a car, and spoke on the phone to friends. AR |
| 14 |  | 153. Later, she traveled to Iran to visit her family. AR 153, 78. |
| 15 | 20. | On March 10, 2003, Tabatabai returned to Dr. Douville with the symptoms of which she had |
| 16 |  | complained before, this time with a laboratory finding of proteinuria and a diagnosis of |
| 17 |  | "multiple benign-appearing thyroid masses, on ultrasound, most consistent with benign |
| 18 |  | thyroid adenomatosis." AR 54. |
| 19 | 21. | In March 2003, an adrenal mass was discovered in Tabatabai's abdomen. On March 2003, |
| 20 |  | Tabatabai was examined by Dr. Donald Silcox, M.D., a rheumatologist. After noting that Dr. |
| 21 |  | Douville had referred Tabatabai because of a positive antithyroid antibody test and |
| 22 |  | Hashimoto's thyroiditis and persistent chronic illness since autumn 2000, he remarked that an |
| 23 |  | "MR scan of the abdomen on 3/18/03 reveals . . . a 2.7 cm left adrenal mass." AR 68. He |
| 24 |  | stated, "I am intrigued by what the 2.7 cm left adrenal mass represents. I did not see any |
| 25 |  | features of Cushing's disease." AR 69. Although there is a note that states "No Cushing |
| 26 |  | factors," Dr. Silcox also notes that Tabatabai is being evaluated for Cushing's disease. AR 66. |
| 27 | 22. | Cushing's disease is an endocrine or hormonal disorder occurring when the adrenal glands |
| 28 |  | release too much cortisol into the body for long periods of time. *See* Green Decl., Ex. H. |

Case No. C 06-00695 JF
FINDINGS OF FACT AND CONCLUSIONS OF LAW
(MAG)                                                                5

23. On June 30, 2003, Dr. Cherlin, the endocrinologist, found a cortisol level of 22.5 and an ACTH level of less than 5. His notes from the visit state "unable to do Dex Supp test – but these #s – plus adrenal mass convince me of Cushing's – and prob justify surgery." AR 51. The following visit, Dr. Cherlin discussed surgery with Tabatabai. *Id.*

24. On June 17, 2003, Dr. Silcox, Tabatabai's rheumatologist, without further notes, entered a diagnosis of Hashimoto's thyroiditis, an antinuclear antibody, and Cushing's disease. AR 79.

25. In January 2004, Tabatabai underwent a laparoscopic left adrenalectomy to remove the adrenal tumor. AR 449. In August 2004, Dr. Cherlin worte a letter stating: "I have treated Ms. Tabatabai since March 2003. . . . By April 2003, a 3 cm left adrenal mass was discovered and a diagnosis of Cushing's Syndrome was made. Her symptoms of fatigue, anxiety, depression, weakness, insomnia, and poor concentration were clearly related to the elevated cortisols." AR 450. On March 8, 2005, Dr. Len Doberne, an endocrinologist, wrote "Parto Tabatabai has had Cushing's Syndrome treated with left adrenalectomy. She has had a slow recovery and continues to have fatigue, weakness and headaches . . . she continues undergoing further medical evaluation." These documents were provided to VPA in December 2005, but VPA declined to consider them because, discussed further below, they were submitted after Tabatabai had already appealed the denial of her claim. VPA's letter stated that the Plan provided for one administrative appeal and that "there are no additional administrative reviews provided under the Plan" following that appeal. AR 8.

**C.   Tabatabai's Claim for Benefits**

26. On March 11, 2002, Tabatabai submitted a Physician's Certificate for Self-Insured Disability Benefits, stating that her primary diagnosis was "Mixed Disorders and reaction to stress" (ICD-9 Code 308.4). AR 313.

27. She subsequently submitted two requests for extensions of her short-term disability benefits on the basis of "Major Depressive Episode - Severe, without psychotic symptoms" (ICD-9 296.23) and "Panic Disorder without agoraphobia" (ICD-9 300.01). AR 199 (first request, dated May 17, 2002); AR 276 (second request, dated August 21, 2002).

28. Tabatabai was paid benefits from March 8, 2002 through March 8, 2003. The end of Tabatabai's fifty-second week of short term disability was March 7, 2003. AR 26.

29. On October 31, 2002, Tabatabai applied for long-term disability benefits under the Plan. AR 174-76. She sent only the first page of her claim, stating that she was "unable to complete the rest of the claim" before she left California from November to early December 2002. AR 176. She listed her disabling conditions as "physical problems: chest pain, upper and lower back pain, extremely low energy, tremor, digestive; psychological: severe depression and anxiety, sleep problems, concentration." AR 175.

30. On December 31, 2002, Tabatabai submitted a "Daily Activities Questionnaire," in which she noted that her health problems included "back pain, anxiety and depression related, sleep problems, low energy level, etc." AR 152-58. Her answers to the questionnaire indicated that her "poor health," stemmed, in part, from "a very unhealthy situation . . . experienced at work environment." AR HP152. She also stated that her supervisor abused her and that she had reported the supervisor to that person's manager at HP. AR 155. She stated simply that: "My health problems prevent me from working and handling tasks." AR 156.

31. In a February 20, 2003 letter, VPA denied Tabatabai's claim, stating:

> The medical evidence in your file documents you suffer from depression and anxiety, as these conditions are limited to the initial 52 weeks under the Hewlett Packard Disability Plan; we cannot consider these conditions as part of your disability as of March 8, 2003. The medical documentation in your file does not show any other condition that would limit your ability to work, the objective medical evidence does not support that you are unable to continuously perform the duties of any occupation that you are qualified to perform, therefore, you are not considered Totally Disabled by the Plan, and as of March 8, 2003 your claim for Long Term Disability Benefits is being denied.

AR 125.

32. To determine Tabatabai's eligibility for LTD benefits, VPA reviewed the medical information in her file but ultimately determined that her records demonstrated that she was claiming disability as a result of depression and anxiety. AR 1-3, AR 123-26. Because consideration of each of these conditions is limited to the initial fifty-two weeks of disability, VPA

Case No. C 06-00695 JF
FINDINGS OF FACT AND CONCLUSIONS OF LAW
(MAG)                                                7

concluded that Tabatabai's medical file did not support that she was in treatment for a condition that would prohibit her from continuously performing the duties of any occupation that she is qualified to perform. AR 125.

33. In a letter dated July 24, 2003, Tabatabai appealed VPA's denial of LTD benefits. AR 77. She explained that her mental health problems stemmed from "an adrenal mass and hormonal problems," and that she had been diagnosed with "Hashimoto disease" and "Cushing's disease." *Id*. She also stated that

> These diseases are affecting my health (my stress hormone Cortisol is higher than normal and some other hormones are low). The possibility of surgery has been discussed. The Cushing's disease according to the doctors causes depression and many other problems. I still have to follow up with doctors to figure out what to do . . . I am applying for LTD based on my physical problems.

AR 77-78. She enclosed with her appeal (1) the June 17, 2003 note from Dr. Silcox setting forth, without more, the diagnosis of Hashimoto's thyroiditis, antinuclear antibody, and Cushing's disease, AR 79; (2) a lab report confirming the adrenal gland mass, AR 80-82; (3) lab reports showing recent elevated levels of cortisol and a two-year old report showing a normal cortisol level, AR 83, 84; and (4) a Neurological Office Revisit dated June 7, 2003, that was not in the administrative record but appears undisputed, from Dr. Douville stating an impression that Tabatabai is "Disabled – Hashimoto – Endocrine."

34. In an August 1, 2003 letter, VPA acknowledged Tabatabai's appeal and requested additional medical records. HP 76. VPA's letter continued:

> The appeal procedures clearly indicate that you must state in writing those reasons, along with examples, of why you feel the denial of your claim was in error. We are allowing you an additional 30 days to submit documentation in support of your contention that our denial was in error. If nothing further is received, our Administrative Review will be based upon the information we have in our files.

*Id*. VPA also stated that "the initial 45-day review period will be suspended pending receipt of this information." *Id*.

35. On August 13, 2003, a VPA employee phoned Tabatabai and left her a message regarding the additional information requested. AR 4.

Case No. C 06-00695 JF
FINDINGS OF FACT AND CONCLUSIONS OF LAW
(MAG)                                                        8

36. In an August 25, 2003 letter, VPA informed Tabatabai that it was requesting medical records directly from her physicians and reiterated that "the initial 45-day review period will be suspended pending receipt of this information." AR 71.

37. VPA received additional medical records for Tabatabai by September 10, 2003. AR 2.

38. VPA referred Tabatabai's records to Dr. Gerald Weingarten, Board Certified in Internal Medicine, a physician hired by VPA to review Tabatabai's medical records. HP 44. VPA transmitted the records to Dr. Weingarten stating "Parto Tabatabai is a 49-year-old HT-INTERNET, SW diagnosed with Cushing's disease, continuous anxiety and depression and Hashimoto's disease who stopped working because of these conditions on March 8, 2002." AR 44.

39. Dr. Weingarten's report of September 24, 2003 stated that "[s]he has not had confirmation of a diagnosis of Cushing's disease" and that her "primary symptoms" were all caused by her "anxiety depressive disorder and not any other illnesses including Hashimoto's thyroiditis and [her] adrenal adenoma." AR 42.

40. VPA's attempted unsuccessfully to contact Tabatabai by phone on October 30, 2003. AR 4. In a November 3, 2003 letter, VPA requested additional records (the report of the ultrasound of her thyroid, a copy of the neuropsychological testing from December 2002, a copy of the MRI report from March 2003, and Dr. Hess's chart notes). The letter also informed Tabatabai that VPA had not received all of the medical records requested, that it would proceed based on the records it had on November 10, 2003. AR 34.

41. A VPA representative finally spoke to Tabatabai the next day. Tabatabai stated that she had not had any neuropsychological testing and had not seen Dr. Hess during the period for which VPA was requesting chart notes. She sent VPA a report from an MRI performed in March 2003. AR 2, 31-33.

42. In a letter dated December 4, 2003, VPA, relying on Dr. Weingarten's report, denied Tabatabai's appeal. AR 25-30.[2] The letter stated that Tabatabai was "claiming disability due

---

[2] A duplicate of this letter appears at AR 10-14.

Case No. C 06-00695 JF
FINDINGS OF FACT AND CONCLUSIONS OF LAW
(MAG)                                   9

1  to chest pain, upper and lower back pain, low energy, tremors, digestive problems, severe
2  depression, anxiety, poor sleep and a loss of concentration." AR 26. The letter set out a
3  detailed review of Tabatabai's medical records, but ultimately concluded with a determination
4  that the medical records documented that Tabatabai's symptoms were caused by her anxiety
5  and depressive disorder. *Id.* VPA found there was "no documentation to support the
6  diagnosis of Cushing's" and that Tabatabai's medical history did not demonstrate by objective
7  medical evidence that her adrenal adenoma or Hashimoto's thyroiditis caused her reported
8  limitation in ability to function. AR 29. The letter also noted that Tabatabai had not
9  undergone the neuropsychological testing that was recommended by Dr. Hess, another of
10 Tabatabai's doctors. *Id.*

43. Approximately two years later, Tabatabai retained an attorney who requested that VPA reconsider its denial. AR 447-48. VPA refused to do so. AR 8.

**D.    The Plan's Determination**

44. VPA denied Tabatabai's initial claim for LTD benefits on February 20, 2003. AR 123-26. To determine her eligibility for LTD benefits, VPA reviewed the medical information in her file but ultimately determined that her records demonstrated that she was claiming disability as a result of depression and anxiety. AR 1-3, AR 123-26. Because pursuant to the Plan consideration of each of such medical conditions is limited to the initial fifty-two weeks of disability, VPA concluded that Tabatabai's medical file did not support her claim that she was in treatment for a condition that would prohibit her from continuously performing the duties of any occupation that she is qualified to perform. AR 125.

45. Following Tabatabai's appeal of the initial claim, VPA referred the administrative record along with the additional documents received from Tabatabai and the medical records VPA had requested from Tabatabai's doctors to Dr. Weingarten. In his letter dated September 24, 2004, Dr. Weingarten provided an independent medical records review. Dr. Weingarten found that Tabatabai's primary symptoms were caused by her anxiety and depressive disorder and not Cushing's disease or Hashimoto's thyroiditis. AR 42.

Case No. C 06-00695 JF
FINDINGS OF FACT AND CONCLUSIONS OF LAW
(MAG)                                                              10

46. Dr. Weingarten also indicated that the diagnosis of Cushing's disease had not been independently confirmed, and that a reading of Tabatabai's "AM cortisol" level was "borderline elevated at 23.2, normal 4.3 to 22.4." AR 41; *see also* AR 83. Dr. Weinberg did not expressly evaluate the differences between the cortisol levels from two years prior.

47. Dr. Weingarten thought that two of the medications prescribed to Tabatabai – Xanax and Effexor – might be causing drowsiness and shakiness. AR 42. Dr. Weingarten filled out a Functional Capacities Evaluation Form as part of his review of Tabatabai's record. AR 39. In that form, he indicated that Tabatabai was physically able to sit or drive for up to eight hours and stand or walk for up to six hours (per activity) in a regular workday and could do all of these activities for up to three hours at a time. *Id.*

48. Tabatabai presented objective medical evidence that she suffered from Hashimoto's disease and that she had an adenoma on her left adrenal gland. AR 32-33 (March 18, 2003 MRI exam results: "A 2.7 left adrenal mass is present."), 48-51 (Dr. Cherlin's medical records); 53-54 (notes from Dr. Douville), 55 (correspondence between Dr. Cherlin and Dr. Douville regarding adrenal mass and Hashimoto's), 66-67 (Dr. Silcox's medical records indicating Hashimoto's, adrenal mass, but no Cushing factors), 80-82 (imaging report dated April 18, 2003 discussing adrenal mass).

49. Dr. Silcox, one of Tabatabai's treating physicians, completed a consultation report in which he indicated that there were no features of Cushing's disease. AR 69 (March 25, 2003 consultation report by Dr. Silcox noting adrenal mass, noting lack of Cushing's features). Subsequently, on July 30, 2003, VPA received a note from Dr. Silcox dated June 17, 2003, indicating a diagnosis of Cushing's disease. AR 79. Dr. Cherlin, another of Tabatabai's doctors indicated that he thought the adrenal mass and elevated cortisol level did suggest Cushing's disease. AR 50-51 (notes from Dr. Cherlin's records: March 21, 2003 "? Cushing's from adrenal adenoma?"; June 20, 2003 "unable to do Dex supp test – but these #s – plus adrenal mass convince me of Cushings – & prob justify surgery"; July 7, 2003 "Refer to surg").

Case No. C 06-00695 JF
FINDINGS OF FACT AND CONCLUSIONS OF LAW
(MAG)                                                             11

50. There is evidence in the record presented to VPA that Tabatabai's condition was psychological in nature and was related to a conflict with her supervisor.  AR 47-48 (Dr. Cherlin's March 26, 2003 evaluation), 56 (November 21, 2000 letter from Dr. Douville referring Tabatabai to Dr. James Saadi for neurologic evaluation), 152 and 155 (Daily Activities Questionnaire completed by Tabatabai dated December 31, 2002), 171 (Attending Physician's Statement of Disability signed by Dr. Steven Strong, Psychologist, on November 20, 2002), 175 (claim for LTD benefits completed by Tabatabai dated October 31, 2002), 199 (request for extension of disability benefits signed by Dr. Strong dated May 16, 2002), 202 (Dr. Strong's notes indicating major depression), 204-06 (same), 266-69 (Dr. Strong's notes indicating depression and anxiety), 224 (report by Dr. Mohammad Shenasa, noting Tabatabai's complaint of chest pains and palpitations and that she "is going through a stressful period at her job with her boss"), 257 (worker's compensation claim form completed by Tabatabai dated September 25, 2002), 274 and 276 (notes from Dr. Strong indicating Tabatabai's expected return to work), 297-98 (psychological assessment by Dr. Maryam Tajiki, Psychologist, noting anxiety and harassment at work), 308 (notes from Dr. Douville indicating "verbal abuse from manager" in list of problems), 313 (Physician's Certificate for Disability Benefits signed by Dr. Douville dated March 13, 2002 noting "multiple somatic complaints").

51. There is also significant evidence on the record Tabatabai presented to VPA that she had Cushing's disease.  AR 79 (note from Dr. Silcox dated June 17, 2003, indicating a diagnosis of Cushing's disease), 50-51 (notes from Dr. Cherlin's records: March 21, 2003 "? Cushing's from adrenal adenoma?"; June 20, 2003 "unable to do Dex supp test – but these #s – plus adrenal mass convince me of Cushings – & prob justify surgery"; July 7, 2003 "Refer to surg").

52. The administrative record also contains evidence that Tabatabai's claimed medical issues prevented her from performing any occupation for which she was qualified or could become qualified based on her education, training or experience.  While the notes from Dr. Strong from 2002 are merely conclusory statements that Tabatabai was "precluded from work" or not

Case No. C 06-00695 JF
FINDINGS OF FACT AND CONCLUSIONS OF LAW
(MAG)                                                                12

expected "to be able to work," AR 274-75, there also are statements by Dr. Cherlin linking her symptoms such as depression, fatigue, and anxiety to the Cushing's disease diagnosis, AR 51 (notes from Dr. Cherlin's records from June 23, 2003 and July 7, 2003 noting, for example, low energy level, poor concentration, insomnia, fatigue, anxiety, and depression).

## II. CONCLUSIONS OF LAW

1. The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

2. When a benefit plan confers discretion on the plan administrator to determine eligibility for benefits, courts generally review the denial of benefits for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). This Court previously has determined that the proper standard of review in this action is an abuse of discretion standard. *Tabatabai v. Hewlett-Packard Co. Disability Plan*, 2006 U.S. Dist. LEXIS 66110, at *10 (N.D. Cal. Sept. 1, 2006).

3. Under an abuse of discretion standard, a court must determine whether, on the evidence considered, the administrator's determination was "reasonable." *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1417 (9th Cir. 1991). A court may set aside the administrator's discretionary determination "only when it is arbitrary and capricious." *Jordan v. Northrup Grumman Corporation Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004). A decision "grounded on any reasonable basis" is not arbitrary or capricious and "in order to be subject to reversal, an administrator's factual findings that a claimant is not totally disabled must be "clearly erroneous."" *Id.*

4. When review is under an abuse of discretion standard, a district court may consider only evidence within the administrative record at the time of the administrator's decision. *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 732 n.2 (9th Cir. 2006) (citing *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472 (9th Cir. 1993)). The evidence that was within the administrative record is that which VPA received as of November 10, 2003. AR 34. The Plan's reviewing physician, Dr. Weingarten, only reviewed the administrative record as of September 10, 2003, when it was transmitted to him.

5. "[A] treating physician's opinion gets no special weight and can be rejected on the basis of reliable evidence with no discrete burden of explanation." *Jordan*, 370 F.3d at 879; *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."). A district court may, however, "in conducting its independent evaluation of the evidence in the administrative record, take cognizance of the fact (if it is a fact in the particular case) that a given treating physician has a greater opportunity to know and observe the patient that a physician retained by the plan administrator." *Jebian v. Hewlett Packard Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1109 n.8 (9th Cir. 2003) (internal quotation omitted).

6. The administrative record contains substantial evidence that Tabatabai's symptoms were the result of depression and anxiety. AR 47, 56, 171, 175, 199, 202, 204-06, 224, 269, 274, 276, 297-98, 308, 313.

7. The administrative record also contains substantial evidence that Tabatabai's symptoms were the result of Cushing's disease. Tabatabai's treating physicians diagnosed her with Hashimoto's syndrome, identified an adrenal mass, and eventually diagnosed her with Cushing's disease. AR 48-51, 53-54, 55, 66-67, 69, 79, 80.

8. The fact "[t]hat a person has a true medical diagnosis does not by itself establish disability." The evidence also must establish that the plaintiff's medical condition prevents her from working. *See Jordan*, 370 F.3d at 880. There is evidence in the present record linking Tabatabai's diagnosed Cushing's disease to the reported symptoms that prevented her from working. AR 51 (notes from Dr. Cherlin's records from June 23, 2003 and July 7, 2003 noting, for example, low energy level, poor concentration, insomnia, fatigue, anxiety, and

depression). Unlike the plan administrator in *Jordan*, the administrator here was not asked to rely upon conclusory statements from the claimant's doctors that the claimant was disabled.

9. Unlike the opinion of the plan's reviewing physician in *Jordan*, the opinion of the Plan's reviewing physician here that the claimant was not entirely disabled from working by the disease she suffered was not more thorough and complete than the diagnoses of the treating physicians. *Jordan*, 370 F.3d at 880. In the instant case, the Plan's reviewing doctor concluded that Tabatabai's diagnosis of Cushing's disease had not been independently confirmed. AR 42. In reaching this conclusion, however, the reviewing doctor appears to have disregarded important objective evidence regarding the Cushing's disease diagnosis: (1) that plaintiff had been referred to surgery for Cushing's disease by Dr. Cherlin;(2) that as Dr. Cherlin developed his diagnosis of Cushing's disease, he noted the symptoms that had been preventing Tabatabai's return to work (low energy level, poor concentration, insomnia, chronic back pain, anxiety, depression); and (3) that Dr. Silcox had diagnosed Tabatabai as suffering from Cushing's disease. AR 51, 79. This evidence was critical support for Tabatabai's claim and clearly was material to the issue of whether she qualified as "Totally Disabled" pursuant to Plan § 2(o)(ii). Although a treating physician's opinion is not entitled to special weight, "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *See Nord*, 538 U.S. at 834.

10. The Plan's letter of December 4, 2003 denying Tabatabai's claim stated, "However, based on the medical records in file, there is no documentation to support the diagnosis of Cushing's." AR 29. This statement is demonstrably incorrect as the administrative record includes (1) Dr. Cherlin's diagnosis of Cushing's disease on June 30, 2003 and his referral of Tabatabai to surgery on July 7, 2003; and (2) Dr. Silcox's diagnosis of Cushing's disease dated June 17, 2003. AR 51, 79. The letter of December 4, 2003 did not reflect a basis for discrediting or otherwise disregarding this evidence; rather, the letter did not discuss the evidence at all.

11. The Plan's letter of December 4, 2003 also stated that "there is no documentation to substantiate a limitation in your ability to function as a result of the mass [on Tabatabai's

Case No. C 06-00695 JF
FINDINGS OF FACT AND CONCLUSIONS OF LAW
(MAG)                                     15

adrenal gland]." AR 29.  This determination did not take into account Dr. Cherlin's notes linking Cushing's disease to the fatigue, poor concentration, insomnia, anxiety and depression that prevented Tabatabai's from being able to work.  AR 51.

12.   The failure of the Plan's reviewing doctor and administrator to consider the evidence that Dr. Cherlin and Dr. Silcox had diagnosed Tabatabai with Cushing's disease and the failure of the administrator to consider Dr. Cherlin's notation that Tabatabai's disabling depression and anxiety were connected to the Cushing's diagnosis amount to "an arbitrary refusal to credit a claimant's reliable evidence." *Nord*, 538 U.S. at 834; *see also Farhat v. Hartford Life and Acc. Ins. Co.*, 439 F. Supp. 2d 957, 973 (N.D. Cal. 2006) (Hamilton, J.).  Thus, VPA's decision that Tabatabai was not "Totally Disabled" for purposes of LTD benefits under the Plan was an abuse of its discretion.

13.   For the foregoing reasons, the Court concludes that the Plan administrator abused its discretion in determining that Tabatabai was not "Totally Disabled" under the Plan.  The evidence in the administrative record demonstrates that the administrator arbitrarily failed to credit reliable evidence that Tabatabai was disabled under the terms of the Plan and was entitled to disability benefits, such that the determination was not based upon substantial evidence.  The case will be remanded to VPA for a determination of the scope of benefits owed to Tabatabai in light of this conclusion.

### III. CONCLUSION

Based upon the foregoing findings of fact and conclusions of law, the Court concludes that defendant abused its discretion in denying Tabatabai's long term disability claim, and accordingly finds that Tabatabai is entitled to have judgment entered in her favor.  The Clerk of Court is directed to enter judgment in favor of plaintiff and against defendant,

DATED:    8/3/07

_____
JEREMY FOGEL
United States District Judge

Case No. C 06-00695 JF
FINDINGS OF FACT AND CONCLUSIONS OF LAW
(MAG)                                                           16

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

William Green          bill@dgglaw.com

**Counsel for Defendant:**

Susan B. Burr          sburr@gibsondunn.com
Joseph P. Busch, III   jbusch@gibsondunn.com
Sally J. Berens        sberens@gibsondunn.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.